OPINION OF THE COURT
 

 Smith, J.
 

 Defendant was convicted of criminally negligent homicide
 
 *497
 
 and criminal possession of a weapon in the fourth degree arising out of the stabbing death of a relative during a struggle. The primary issues here are:
 

 (1) whether the People should have been precluded from offering defendant’s first, spontaneous statement into evidence because of the lack of notice pursuant to CPL 710.30 (1) (a) and
 

 (2) whether all four of defendant’s statements made to law enforcement authorities should have been suppressed as fruits of an illegal detention.
 

 On December 1, 1990 at 7:20 p.m., Detective Sheldon Wasserman was assigned to investigate the fatal stabbing of Darryl Dawkins. After finding no one present at the crime scene, near the corner of 105th Street and Northern Boulevard in Queens County, New York City, Wasserman went to the hospital at which Dawkins had been treated. At the hospital, members of Dawkins’ family told Wasserman that defendant, Dawkins’ cousin, had inflicted the fatal wound. Neither the identity of the persons nor their actual witness to the stabbing was shown. Wasserman returned to the crime scene and informed Detective O’Brien, present at the scene, of his findings.
 

 The results of O’Brien’s investigation at the scene coincided with Wasserman’s findings. Anonymous informants, none of whom were identified as eyewitnesses, had told O’Brien that "Gwenny” stabbed Darryl Dawkins. Shortly after O’Brien’s discussion with Wasserman, defendant arrived at the scene. From a crowd, several unknown individuals identified defendant, and O’Brien and other officers approached the car. Defendant, by her own acknowledgment, verified that she is also known as "Gwenny.” Defendant then exited the vehicle and was placed in the back seat of a police automobile.
 

 While the investigation proceeded, O’Brien remained inside the car to watch defendant. After approximately 20 seconds, defendant stated for the first time and without prompting that she stabbed Dawkins.
 

 Wasserman and his partner Herrera brought defendant to the 115th Precinct in Queens County at approximately 10:45 p.m. Wasserman began interviewing defendant at 11:00 p.m. He took defendant’s pedigree information and then administered
 
 Miranda
 
 warnings. Wasserman then transcribed defendant’s statement in approximately two written pages. This
 
 *498
 
 constituted defendant’s second confession. He then placed defendant in a holding cell where she remained until approximately 2:00 a.m. when she received medical treatment for a cut on her hand. She was removed from her cell again by Detective Sanchez for a "reinterview” around 2:50 a.m. She was apprised of her rights and indicated that she understood them. Defendant then made another statement, her third, consisting of four pages and returned to her cell. Around 4:00 a.m. defendant made a fourth, videotaped, statement to an Assistant District Attorney.
 

 By notice dated December 13, 1990 and pursuant to CPL 710.30 (1) (a), the People informed defendant that they intended to offer at trial statements made by defendant. The notice indicated that the substance of the statements was, "Dawkins was hitting her, so she took a knife from a garbage can, [and] stabbed him.” The voluntary disclosure form which was included with the CPL 710.30 (1) (a) notice indicated that three statements had been made, to Detective Wasserman, Detective Sanchez and Assistant District Attorney Creque. No reference was made in said notice to the first statement in the car.
 

 Defendant made an omnibus motion in which she sought to suppress, on two grounds, the statements referred to in the People’s notice. The first was that the arrest was without probable cause and the statements taken should be suppressed "as the fruit of a violation of defendant’s rights against unreasonable seizures under the United States and New York Constitutions.
 
 Dunaway v New York,
 
 442 US 200 (1979).” The second ground was that the statements were involuntarily made in that "[t]he statements were not the product of a knowing, voluntary and intelligent waiver by defendant of her rights to remain silent and to the assistance of counsel.” Without conceding any impropriety, the People consented to a
 
 Huntley
 
 hearing.
 

 Following the
 
 Huntley
 
 hearing, the trial court denied defendant’s motion to suppress the statements. The court found probable cause to arrest defendant at the time she was taken into custody. The court also found that
 
 Miranda
 
 warnings had been given before defendant made statements to Detectives Wasserman and Sanchez and to Assistant District Attorney Creque. While the court found that notice of the first statement to Police Officer O’Brien had not been given, it found such notice pursuant to CPL 710.30 (1) (a) unnecessary be
 
 *499
 
 cause the statement was spontaneous. While the court also found that defendant’s request for discovery of all of defendant’s statements
 
 (see,
 
 CPL 240.20 [1] [a]) had not been complied with in that the first two statements to Detective O’Brien and Detective Wasserman had not been provided to defendant, it found such failure harmless because the third and fourth statements were much more comprehensive than the first two.
 
 [1]
 

 At Supreme Court, following a jury trial, defendant was convicted of criminally negligent homicide and criminal possession of a weapon in the fourth degree. The Appellate Division affirmed, agreeing with the trial court that there was probable cause for defendant’s arrest and that no CPL 710.30 (1) (a) notice was required for the first, spontaneous statement. A Judge of this Court granted defendant’s application for permission to appeal.
 

 Defendant claims that her initial statement to the police should have been precluded because the People failed to provide notice of intent to offer it. Defendant also argues that her statements to the police and the Assistant District Attorney should have been suppressed as the fruits of an arrest made without probable cause on the basis of unsubstantiated hearsay or rumor.
 

 The People argue that defendant’s first statement was spontaneous and no notice was required for it. They also argue that the police officers acted reasonably by placing defendant in the police car and that even if defendant’s detention was illegal, any possible taint flowing to defendant’s statements was fully attenuated.
 
 [2]
 

 II
 

 Defendant argues that the People should have been precluded from offering her initial statement to the police because the People failed to provide notice of their intent to use the statement pursuant to CPL 710.30 (1) (a). That statute provides that the People must give notice to the defendant whenever they "intend to offer at a trial * * * evidence of a statement made by a defendant to a public servant” which
 
 *500
 
 would be suppressible if involuntarily made. An involuntary statement includes one that has been physically or psychologically coerced, obtained by a promise or statement that creates a risk of falsely incriminating oneself or obtained by the failure to give
 
 Miranda
 
 warnings (CPL 60.45). CPL 710.30 (2) requires that such notice be given "within fifteen days after arraignment and before trial.” Late notice may be given only upon good cause
 
 (id.; People v O’Doherty,
 
 70 NY2d 479, 487-489).
 

 It is for the court and not the parties to determine whether a statement is truly voluntary or is one in which the actions of the police are the functional equivalent of interrogation causing the statement to be made
 
 (see, People v Ferro,
 
 63 NY2d 316,
 
 cert denied
 
 472 US 1007 [placing stolen furs in front of the defendant’s cell was the functional equivalent of interrogation and the defendant’s statement should have been suppressed]). In
 
 People v Greer
 
 (42 NY2d 170), we noted that the CPL 710.30 (1) (a) notice need not be served on a defendant where "there is no question of voluntariness”
 
 (id.,
 
 at 178). In that case even though this Court found that the statement in question was completely voluntary (when discovered by the police in the midst of sexual intercourse, defendant claimed the act was consensual rather than rape but, in response to the officer’s question, did not know the victim’s name), it precluded the statement for failure of the People to give the required notice. Since the statement here was made to a law enforcement official and the defendant had the right to have a court review the circumstances under which the statement was given and to determine its voluntariness, including whether it was truly spontaneous or the functional equivalent of interrogation
 
 (People v Ferro,
 
 63 NY2d 316,
 
 supra; People v Bryant,
 
 59 NY2d 786,
 
 rearg dismissed
 
 65 NY2d 638), defendant was entitled to notice under CPL 710.30 (1) (a). Both prior courts determined that the first statement was voluntary and there is evidence in the record to support that determination. The first statement, made in the police car, should have been precluded because of the lack of CPL 710.30 (1) (a) notice
 
 (People v Greer,
 
 42 NY2d 170,
 
 supra).
 

 III
 

 Preclusion of the first statement alone, however, would not entitle defendant to a new trial. Inasmuch as there were several subsequent statements by defendant that were more
 
 *501
 
 detailed and comprehensive, the erroneous admission of defendant’s first statement does not alone require reversal.
 

 There was no probable cause to arrest defendant when she was placed in the police car. "Probable cause requires information sufficient to support a reasonable belief that an offense has been or is being committed by the suspect”
 
 People v Hicks,
 
 68 NY2d 234, 238; CPL 140.10). Although it is settled that probable cause may be provided through hearsay information, the informants providing the hearsay must be reliable and have a basis for their knowledge of the information
 
 (see, People v Parris,
 
 83 NY2d 342, 346-347;
 
 People v Johnson,
 
 66 NY2d 398, 402). The statements made by the anonymous individuals at the crime scene and the members of decedent’s family failed to meet the "basis of knowledge” prong of the standard. The statements consisted only of the suspicion or "rumor” we have criticized in other cases
 
 People v Parris,
 
 83 NY2d, at 348;
 
 People v Johnson,
 
 66 NY2d, 398, 403,
 
 supra).
 

 Here, however, the People argue that the police officers had reasonable suspicion to detain defendant and that a defendant may be detained, and even moved, where the facts so warrant
 
 (see, People v Hicks,
 
 68 NY2d 234, 242,
 
 supra).
 

 [3]
 

 This issue must be addressed by Supreme Court in the first instance. That court must make a threshhold determination as to whether the police action constituted an arrest or some lesser form of detention. If the court finds that only a temporary detention occurred, it will have to go on to consider whether that detention was reasonable under the circumstances, with a view toward such factors as common sense and ordinary human experience, the likelihood of the action to quickly affirm or dispel suspicions and the rapid pace of a developing situation
 
 (id.,
 
 at 241-242). If the court finds that defendant’s detention was lawful, then the judgment of conviction and sentence should be adhered to and the judgment of conviction and sentence should be amended to reflect this additional determination by Supreme Court made upon our remittal.
 

 If Supreme Court determines, however, that the detention was unlawful, the court must then determine whether defen
 
 *502
 
 dant’s latter three statements were attentuated from the illegal detention, and from defendant’s initial, "spontaneous” statement
 
 (see, People v Rogers,
 
 52 NY2d 527,
 
 cert denied
 
 454 US 898). If any of these statements was not sufficiently attentuated from the prior illegality, it must be suppressed, and, if all three of defendant’s station house statements are suppressed, a new trial must be ordered. However, if one or more of the three survives, defendant’s conviction should be reviewed under a harmless error analysis
 
 (see, People v Crimmins,
 
 36 NY2d 230). If the court determines that none of the three statements need be suppressed or that some should be, but that harmless error applies, the judgment of conviction and sentence will stand and should be amended to reflect this determination.
 

 IV
 

 We reject defendant’s contention that the trial court improperly admitted evidence of a prior uncharged crime. It is settled that where evidence of a prior uncharged crime contains more probative value than risk of prejudice to the defendant, the evidence is admissible
 
 (see, People v Hudy,
 
 73 NY2d 40, 55;
 
 People v Satiro,
 
 72 NY2d 821, 822;
 
 People v Alvino,
 
 71 NY2d 233, 241, 242). The claim by the decedent’s stepfather, Alexander Swinney, that defendant had stolen $540 from him was central to the facts of this case in order to establish the basis of the decedent’s conflict with defendant.
 

 We have reviewed defendant’s remaining contention and find it to be without merit.
 

 Accordingly, the order of the Appellate Division should be modified by remitting the case to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
 

 Order modified by remitting the case to Supreme Court, Queens County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
 

 [1]
 

 . Defendant makes no argument here concerning the failure to provide the first two statements as required by CPL 240.20 (1) (a).
 

 [2]
 

 . The People, although maintaining in the trial court and at the Appellate Division that there was probable cause to take defendant into custody, have abandoned that argument here.
 

 [3]
 

 . While the People apparently made no argument in the Appellate Division concerning the issue of reasonable suspicion, they raised the issue in oral argument at the end of the
 
 Huntley
 
 hearing by stating that "it is entirely reasonable under all of those circumstances for Gwendolyn to be placed in the police car.”